620 S.E.2d 54

Octavia JACKSON, Appellant,

v.

SWORDFISH INVESTMENTS, L.L.C., Respondent.

No. 26037.

Supreme Court of South Carolina.

Heard June 2, 2005.
Decided Sept. 6, 2005.
Rehearing Denied Oct. 5, 2005.

Carl L. Solomon, of Gergel, Nickles & Solomon, P.A. and Tony Dessausure, of The Dessausure Law Firm, both of Columbia, for Appellant.

J.R. Murphy and Adam J. Neil, both of Murphy & Grantland, P.A., of Columbia, for Respondent.

Justice BURNETT.

This is a negligence action against a commercial landlord arising out of a shooting which occurred inside the leased premises. The trial court granted the landlord's motion for summary judgment. We certified the case from the Court of Appeals pursuant to Rule 204(b), SCACR. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Ronald O. Swinson, Jr. and his wife each own a fifty-percent share of Swordfish Investments, LLC ("Swordfish"), a limited liability company which Swinson set up to own real estate. Swinson is employed by C.B. Richard Ellis, a commercial real estate and brokerage firm.[1] C.B. Richard Ellis is the leasing agent for properties owned by Swordfish.

Swordfish owns the Columbia East Shopping Center in Columbia. Uptop Management, Inc. ("Uptop"), a South Carolina corporation, leased a portion of the shopping center for use as a nightclub. The lease dated December 21, 2000, was signed by Swinson on behalf of Swordfish and by Pearl Ingram on behalf of Uptop. Swinson testified he believed Uptop subsequently entered into a management agreement with Dance, Inc. ("Dance") over its portion of the shopping center during the term of Uptop's lease. When operated by Dance, Uptop's nightclub was known by various names, including Club Voodoos.

During the operation of the various nightclub establishments in Uptop's leased portion of the shopping center, numerous crimes, including narcotics violations, assaults, and various instances of disorderly conduct, were committed on the premises. Ingram requested security be provided by either Swordfish or C.B. Richard Ellis on Swordfish's behalf. Swordfish agreed to provide security in the common areas, first by employing off-duty deputies and later employing a private security company.

---

1. Swinson is a partner in C.B. Richard Ellis and is employed to run the overall operations of the company. He is not a commercial real estate broker.

Larry Capall, director of property management for C.B. Richard Ellis, testified Swordfish switched from the off-duty officers to the private security company because the club owners complained about the cost to employ the off-duty deputies. Although Swordfish arranged for the security in the common areas, it charged the tenants for the cost of maintaining the security. Swordfish considered security "additional rents" under the lease to be paid by the tenant. Prior to November 3, 2001, Swordfish, because of the failure of payment by Uptop, discontinued the security in the common areas.

On November 3, 2001, Octavia M. Jackson (Appellant) and several friends entered Club Voodoos. While Appellant was in the club, two altercations occurred. One involved a male patron who was escorted from the club. Soon thereafter Appellant and her party decided to leave and began exiting the club. At that time, the male patron re-entered the club with a gun and began shooting in the air and indiscriminately into the crowd. Appellant was shot multiple times.

Appellant argues Swordfish had a duty to protect her from the criminal activity in the club by providing adequate security on or in the vicinity of the property where Appellant was shot. The trial court granted Swordfish's motion for summary judgment.

## ISSUE

Did the trial court err in granting Swordfish's motion for summary judgment?

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Café Assocs., Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E.2d 162 (1991). Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Middleborough Horizontal Property Regime Council of Co–Owners v. Montedison,* 320 S.C. 470, 465 S.E.2d 765 (Ct.App.1995). Further, summary judgment should not be granted even when there is no dispute as to the evidentiary

facts, if there is a dispute as to the conclusion to be drawn therefrom. *MacFarlane v. Manly*, 274 S.C. 392, 264 S.E.2d 838 (1980). An appellate court reviews the granting of summary judgment under the same standard applied by the trial court. *George v. Fabri*, 345 S.C. 440, 548 S.E.2d 868 (2001).

## LAW/ANALYSIS

 In a negligence action, a plaintiff must show the (1) defendant owed a duty of care to the plaintiff (2) defendant breached the duty by a negligent act or omission (3) defendant's breach was the actual and proximate cause of the plaintiff's injury and (4) the plaintiff suffered injury or damages. *Dorrell v. South Carolina Dept. of Transp.*, 361 S.C. 312, 318, 605 S.E.2d 12, 15 (2004). Whether the law recognizes a particular duty is an issue of law to be determined by the court. *Ellis v. Niles*, 324 S.C. 223, 479 S.E.2d 47 (1996).

 Appellant argues the trial court erred in concluding Swordfish had no duty to protect her from the criminal acts of her assailant inside the leased premises. We disagree.

In *Cramer v. Balcor Property Management, Inc.*, 312 S.C. 440, 441 S.E.2d 317 (1994), we concluded, on a certified question from the federal district court, that residential landlords do not owe a general duty to protect tenants from criminal activity of third parties. We agreed with the federal district court opinion in *Cooke v. Allstate Management Corp.*, 741 F.Supp. 1205 (D.S.C.1990), which found the residential landlord/tenant relationship to be fundamentally different from the relationships for which South Carolina law will impose a duty to protect against criminal activity.

In the present case, Appellant argues that as the sublessee's invitee, Swordfish had a common law duty to protect her from the criminal acts of a third party. Appellant's status as an invitee does not, under the facts of this case, create a duty on the part of Swordfish to protect her from the criminal acts of third parties inside the leased premises, an area which Swordfish did not control or possess.[2]

---

2. Appellant argues *Cramer* is inapposite because Swordfish is a commercial landlord and *Cramer* addressed a landlord's duty only in the residential setting. We decline to address the issue of a commercial

In *Cramer*, we explained that even though South Carolina law does not impose a duty on a landlord to protect a tenant from the criminal acts of third parties, a plaintiff is not precluded from asserting a general negligence principle. A duty may arise under the particular circumstances of an individual case based upon a showing of negligence constituting the proximate cause of the loss, even though the law does not impose a general duty on landlords to protect tenants or their guests from the criminal acts of third parties. *Cramer*, 312 S.C. at 443, 441 S.E.2d at 319.

■ Appellant argues the applicability of two exceptions to the traditional rule of non-liability of landlords. The exceptions are the "affirmative acts" exception and the "common areas" exception. We conclude neither exception is applicable in this case.

■ Under the common law, even where there is no duty to act but the defendant voluntarily undertakes the act, the defendant assumes a duty to use due care. *Russell v. City of Columbia*, 305 S.C. 86, 406 S.E.2d 338 (1991). Appellant argues that once Swordfish acted to provide security, it was obligated to maintain adequate security.

Although Swordfish agreed to arrange for security in the common areas at the tenant's expense, there is no evidence in the record Swordfish ever agreed to provide security inside the club. Swordfish had neither possession nor control over the activities inside the club when Appellant was shot. Therefore, no duty arose, under the affirmative acts exception, on the part of Swordfish to protect its tenants or their patrons from the criminal acts of third parties occurring inside the club.

■ Appellant next argues Swordfish, as owner of the property, had a duty to maintain common areas in a safe and secure manner. Because Appellant's assailant was able to re-enter the club, Appellant argues Swordfish breached its duty under the common areas exception.

landlord's duty under the facts of this case, in which the crime occurred inside leased premises not under the landlord's control, and Appellant presented no evidence of any alleged criminal or suspicious activity occurring in areas under the landlord's control.

In a case presenting different facts, we might well agree with the dissent that a commercial landlord has a duty to reasonably protect invitees from foreseeable criminal acts in areas under the commercial landlord's control. Assuming, without deciding, Swordfish had a duty under the lease to provide security in the common areas, Appellant has failed to present any evidence demonstrating a breach of this duty. Appellant has presented no evidence of any alleged criminal or suspicious activity occurring outside the club before Appellant's assailant re-entered the club. There simply is no evidence in the record suggesting the assailant's activities outside the club would have alerted security personnel in the common areas of the assailant's impending criminal conduct inside the club.

Finally, our resolution of this issue is dispositive and we need not address Appellants' remaining issues regarding proximate causation. *Whiteside v. Cherokee County School Dist. No. One*, 311 S.C. 335, 428 S.E.2d 886 (1993) (appellate court need not address remaining issue when resolution of prior issue is dispositive).

**AFFIRMED.**

MOORE and WALLER, JJ., concur. PLEICONES, J., dissents in a separate opinion in which TOAL, C.J., concurs.

Justice PLEICONES.

I respectfully dissent. In my opinion, Swordfish had a duty to reasonably secure the common areas of the premises, and there are genuine issues of material fact concerning breach and causation.

By emphasizing the fact that Appellant was injured inside the club, an area over which Swordfish purportedly had no control, the majority avoids Appellant's argument that Swordfish had a duty to provide reasonable security measures in the common areas outside the nightclub, which were under Swordfish's control, and that the failure to do so allowed the assailant to return to the club and injure Appellant. That Appellant was shot inside the club relates to causation, which in my opinion, is not here a proper element of negligence on which to base summary judgment.

I agree with Appellant that a commercial landlord, under circumstances here appearing, has a duty to reasonably protect invitees from foreseeable criminal acts in areas under the landlord's control. *Compare Cramer v. Balcor Prop. Mgmt., Inc.*, 312 S.C. 440, 441 S.E.2d 317 (1994) (holding that a residential landlord has no duty to protect invitees from foreseeable criminal acts), *with Bullard v. Ehrhardt*, 283 S.C. 557, 559, 324 S.E.2d 61, 62 (1984) (holding that a store owner has a duty to protect invitees from foreseeable criminal acts), *and Munn v. Hardee's Food Sys., Inc.*, 274 S.C. 529, 531, 266 S.E.2d 414, 414–15 (1980) (same), *and Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S.C. 479, 484, 238 S.E.2d 167, 169 (1977) (same).

Swordfish is a commercial landlord which expects members of the general public to utilize the common areas as patrons of Swordfish's tenants. If a landlord like Swordfish should reasonably anticipate that the paying public will be exposed to society's criminal element, then it is appropriate that the landlord be expected to take measures to protect the patrons. As the party in control of the common areas, the landlord is in the best position to bear the burden with respect to those areas. *See Cramer*, 312 S.C. at 442–43, 441 S.E.2d at 318–319 (distinguishing store owners, who invite the general public to their premises, from residential landlords, who do not invite the general public to their premises) (relying on *Cooke v. Allstate Mgmt. Corp.*, 741 F.Supp. 1205 (D.S.C.1990)).

The question, then, is whether Swordfish should have foreseen criminal behavior taking place in the common areas of its property. The evidence in the record is overwhelming that long before Appellant was shot, drug use, violence, and other criminal behavior were rampant in the common areas surrounding the nightclub. Swordfish was fully aware of the situation, and I would therefore hold that a duty to reasonably secure the common areas arose prior to the shooting at issue.

A jury[3] must determine whether Swordfish breached its duty after considering evidence relating to what security measures, if taken, would have fulfilled that duty. I find summary judgment not properly based on this element of negligence.

---

3. In her complaint, Appellant requested a jury trial.

Likewise, there remain for further factual development matters relating to causation. Assuming a breach of Swordfish's duty in the common areas, it remains to be determined whether such breach was a proximate cause of the assailant's access to the club while armed.

Further, I disagree with the circuit court that proximate cause is absent as a matter of law. The circuit court held that there was no question but that the shooting was an unforeseeable, intervening act that broke the causal link between any breach by Swordfish and Appellant's injury. This determination is irreconcilable with Swordfish's duty arising from the foreseeability of criminal conduct. Like the presence of cause in fact, the presence of proximate cause would depend on the jury's decision on breach. It is impossible at this point to determine as a matter of law that a breach by Swordfish did not cause Appellant's injury.

On these grounds, the grant of summary judgment to Swordfish should be reversed, and the case remanded for trial.

In addition, and notwithstanding the previous discussion, the case must be remanded for a determination whether Swordfish had a contractual duty to secure the common areas. Appellant argued to the circuit court and this Court that Swordfish assumed such a duty in its lease with Up–Top. The circuit court did not interpret the lease, however, because the court held that Appellant's "negligence claim [could not] lie if it [were] based on a breach of contract between Swordfish and Up–Top in the absence of a duty independent of the contract." This was error. Even when a duty to the plaintiff does not otherwise exist, a duty may arise out of the alleged tortfeasor's contract with a third party. *Andrade v. Johnson*, 356 S.C. 238, 245, 588 S.E.2d 588, 592 (2003). Accordingly, the grant of summary judgment should be reversed and the case remanded so that the circuit court can interpret the lease. Were the court to find that the lease imposed a duty on Swordfish, then breach and causation would depend on the nature and extent of that contractual duty, which could differ from the common-law duty discussed above.

For the reasons I have stated, I would reverse the grant of summary judgment and remand the case for trial.

TOAL, C.J., concurs.