Christopher **TRIPLETT,** and Deborah H. **Triplett,** Plaintiffs,

v.

**SOLEIL GROUP, INC.,** Starwood Hotels & Resorts Worldwide, Inc., The Sheraton Corporation (n/k/a The Sheraton, LLC), and Main Street Hotel, LLC, Defendants.

Civil Action No. 2:07–CV–361–PMD.

United States District Court, D. South Carolina, Charleston Division.

Sept. 22, 2009.

Cherie K. Durand, Samuel Fraser Reid, III, Hulsey Law Group, Paul H. Hulsey, Hulsey Litigation Group, Charleston, SC, for Plaintiffs.

Stephen Edward Darling, Haynsworth Sinkler Boyd, Charleston, SC, for Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This franchise liability case arises out of Plaintiff Christopher Triplett's assertion that he contracted Legionnaires' disease from his exposure to bacteria at a Sheraton hotel. Defendants Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") and The Sheraton, LLC ("Sheraton") moved the court for an order granting summary judgment in their favor. Based on the following, the court grants Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiff Deborah Triplett reserved the Sheraton Hotel North Charleston–Convention Center ("Hotel") to host her high school graduating class's twentieth reunion between October 14 and 16, 2005. Mrs. Triplett's husband, Christopher, attended the reunion with her, but neither Plaintiff stayed as overnight guests at the Hotel. Plaintiffs allege that, during their time at the Hotel, they were exposed to bacteria which caused Mr. Triplett to contract Legionnaires' disease. Plaintiffs' Complaint specifically focuses on the swimming pool and whirlpool tub as the sources of bacteria within the Hotel. At all relevant times, Defendant Starwood was the parent corporation of Sheraton Holding Corporation, and Sheraton Holding Corporation was the parent corporation of Defendant Sheraton. Prior to 2003, Defendants Starwood and Sheraton owned and operated the Hotel, but at some point in 2003, Main Street Hotel, LLC ("Main Street") acquired ownership of it. After taking title to the Hotel, Main Street entered into a conversion license agreement ("License Agreement") with Sheraton, which made Main Street the licensee of certain Sheraton trademarks and logos for use at the Hotel. Main Street also entered into a Reservations Agreement with Starwood, which allowed it to participate in the StarLink Reservations System utilized by other Starwood brand hotels. Between January 1, 2005 and November 16, 2006, Soleil Group, Inc. ("Soleil Group") managed the Hotel for Main Street.

Plaintiffs assert that, as business invitees of the Hotel, all Defendants owed them a duty of care and that they breached this duty by negligently maintaining the whirlpool tub, swimming pool, and other equipment which might have caused Mr. Triplett to contract Legionnaires' disease. Plaintiffs also contend that Defendants were negligent per se because they did not maintain these amenities in accordance with the regulations adopted by the South Carolina Department of Health and Environmental Control. Finally, Plaintiffs specifically assert liability against Starwood and Sheraton on the grounds that, even if Main Street and Soleil Group owned and operated the Hotel, those entities acted as both Starwood's and Sheraton's agents, therefore making them vicariously liable for Plaintiffs' damages.

## *LEGAL STANDARD FOR SUMMARY JUDGMENT*

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact."

Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

### ANALYSIS

Plaintiffs assert liability against Starwood and Sheraton based on multiple theories. First, Plaintiffs assert that these Defendants are directly liable to them because they owed Plaintiffs a duty to reasonably maintain the indoor swimming pool, whirlpool tub, and other equipment at the Hotel and they breached this duty. Second, Plaintiffs allege that these Defendants are vicariously liable based on a theory of actual agency for any actions of Main Street and Soleil Group that may have proximately caused Mr. Triplett to contract Legionnaires' disease. Finally, Plaintiffs allege that these Defendants are also vicariously liable for the injuries they suffered due to Main Street's and Soleil Group's negligence because these Defendants represented Main Street and Soleil Group to be their apparent agents. Defendants Starwood and Sheraton believe they are entitled to summary judgment as to all of Plaintiffs' claims against them because they did not own, operate, or otherwise control the day-to-day operations of the Hotel; therefore, Plaintiffs cannot assert either direct or vicarious liability against them. Because this is a negligence claim based on diversity jurisdiction, South Carolina law applies. *Roe v. Doe,* 28 F.3d 404, 407 (4th Cir.1994) ("Federal courts in diversity cases apply the law of the forum state.").

### I. Direct Liability

To assert direct liability based on a negligence claim in South Carolina, Plaintiffs must show that (1) Defendants owed them a duty of care; (2) Defendants breached this duty by a negligent act or omission; (3) Defendants' breach was the proximate cause of their injuries; and (4) they suffered injury or damages. *Dorrell v. S.C. DOT,* 361 S.C. 312, 318, 605 S.E.2d 12, 15 (2004) (citation omitted). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." *Jackson v. Swordfish Inv., L.L.C.,* 365 S.C. 608, 612, 620 S.E.2d 54, 56 (2005) (citation omitted). "A franchisor may operate a franchise establishment or control the instrumentality at the franchise establishment that causes injury and thus owe a duty to patrons of the franchise." *Allen v. Choice Hotels Int'l,* 409 F.Supp.2d 672, 677 n. 3 (D.S.C.2006), *aff'd,* 276 Fed.Appx. 339 (4th Cir.2008) ("Like the vicarious liability

analysis, the direct liability cases also look to the franchisor's actual control or retained right of control to determine the presence of a duty for purposes of evaluating whether the franchisor was itself negligent."). As noted above, Starwood and Sheraton contend that they did not exert any control over the day-to-day operations or activities of the Hotel; therefore, the court should find as a matter of law that they did not owe a duty to Plaintiffs. Plaintiffs argue that these Defendants owed them a duty of care because they had the right to and did control the conduct of the employees at the Sheraton Hotel.[1]

Plaintiffs believe the License Agreement between Sheraton and Main Street evidences Sheraton's right to control Main Street and Soleil Group because its provisions afford Sheraton discretion to establish all rules, regulations, and policies of the Hotel. To support this contention, they reference numerous provisions of the License Agreement, including the fact that Main Street expressly agreed "to Operate the Hotel in strict conformity with the Standards and Policies, including all rules, regulations, and policies which are by their terms mandatory, including, without limitation, those contained in the Manuals;" that Sheraton reserved the right to add to or alter the Hotel's operational standards and policies; that Sheraton reserved the right to inspect the Hotel without notice at any time; and that Sheraton required the Hotel to be managed and staffed by personnel who had satisfied Sheraton's training requirements. Along with this alleged right to control the Hotel, Plaintiffs believe that Brand Standards utilized by Starwood and Sheraton, which is a 50–page checklist of standards that governed a variety of aspects from the manner in which Hotel associates are to greet guests, or knock on a guest's room door, to the specific water depth, water temperature, step heights and tread of the whirlpool, evidences their exertion of control over Main Street and Soleil Group. Plaintiffs also consider the fact that Starwood hired an independent contractor, LPA Worldwide, Inc., to conduct periodic quality assurance inspections at the Hotel to ensure compliance with these standards as support for their contention.

To show that they did not control the day-to-day operations of the Hotel, Starwood and Sheraton provided the deposition testimony of Michael Zubel, an employee of Soleil Group that served as the Hotel's General Manager at the time of Plaintiffs' visit. He testified at his deposition that neither Starwood nor Sheraton had any control over the day-to-day operations of the Hotel. He further testified that their interaction with the Hotel consisted only of monitoring the brand standards that Main Street and Soleil Group had to comply with pursuant to the License Agreement and that, besides the annual quality assurance inspection, he only recalled approximately three other inspections taking place during his time at the Hotel. While Plaintiff did reference several Brand Standards that regulated the water depth, water temperature, step heights, and other aspects of the whirlpool tub, these guidelines do not deal with maintaining the water quality of the whirlpool tub, which is what Plaintiffs complain of. Also, Plaintiffs did not direct the court's attention to any provision in the License Agreement or Brand Standards that evidences Starwood's or Sheraton's control over the Hotel's maintenance of the swimming pool. The court's review of the Brand Standards uncovered a requirement that the Hotel have a

---

**1.** Although Plaintiffs argued in their Complaint that Starwood and Sheraton owed them a non-delegable duty to maintain the swimming pool and whirlpool tub with due care, they did not address this position in their memoranda.

"swimming pool which is clean, well maintained, and properly lit," but this generic request does not evidence sufficient control to find that Starwood and Sheraton directly owed Plaintiffs a duty of care.

■ Based on the foregoing, the court does not believe that the mere terms of the License Agreement or the Sheraton Brand Standards inspections establish that Starwood or Sheraton operated the Hotel. There is no doubt that Main Street owned the Hotel and that Soleil Group managed it, and the evidence indicates that Starwood and Sheraton infrequently inspected the Hotel to see if Main Street and Soleil Group complied with the Brand Standards. The Fourth Circuit has concluded, and so does this court, that these types of documents merely ensure that Main Street and Soleil Group operate and service the Hotel in a manner consistent with the other hotels in the Starwood and Sheraton brand systems. *Allen v. Choice Hotels Int'l*, 276 Fed.Appx. 339, 343 (4th Cir.2008) (finding that the franchisor of a hotel brand was not directly liable to guests of a hotel because a franchise agreement, as well as operational standards and regulations, did not establish that the franchisor exerted sufficient control over the hotel's operations to create a duty owed to the hotel guests). Without more evidence that Starwood or Sheraton operated the Hotel, or at least exerted control over the day-to-day operation and maintenance of the Hotel's swimming pool and whirlpool tub, the court does not find that these Defendants directly owed a duty to Plaintiffs. Therefore, the court grants Defendants Starwood and Sheraton's Motion for Summary Judgment as to Plaintiffs' negligence claim directly asserted against them.

## II. *Vicarious Liability*

### a. *Actual Agency Relationship*

■ Plaintiffs also assert that Main Street and Soleil Group served as the actual agents of Starwood and Sheraton; therefore, Starwood and Sheraton are vicariously liable for their negligence. Under South Carolina law, "the test to determine agency is whether or not the purported principal has the *right to control* the conduct of its alleged agent," *Fernander v. Thigpen*, 278 S.C. 140, 144, 293 S.E.2d 424, 426 (1982) (emphasis in original), and Plaintiffs have the burden of proving that Main Street and Soleil Group acted as Starwood and Sheraton's actual agents. *Frasier v. Palmetto Homes of Florence, Inc.*, 323 S.C. 240, 244, 473 S.E.2d 865, 867 (Ct.App.1996) ("A party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts.") (citation omitted).

Plaintiffs, citing the South Carolina Supreme Court's decision in *Fernander v. Thigpen*, 278 S.C. 140, 142, 293 S.E.2d 424, 425 (1982), also assert that "[q]uestions of agency ordinarily should not be resolved by summary judgment where there are *any* facts giving rise to an inference of an agency relationship," and contend that they have presented sufficient facts by which a reasonable jury could conclude that Main Street and Soleil Group acted as Starwood and Sheraton's actual agents. But as other courts have recognized, if the court allowed for the jury to determine the existence of an agency relationship every time *any* evidence of such a relationship was presented, "franchisors would be foreclosed from summary judgment on a vicarious liability theory by publicly representing their affiliation with the franchisees, regardless of the amount of control the franchisors have over the franchisees." *Allen v. Greenville Hotel Partners, Inc.*, 409 F.Supp.2d 672, 679 (D.S.C.2006). In *Allen v. Greenville Hotel Partners, Inc.*, the district court stated that the proper inquiry in this instance is whether, given

Starwood's and Sheraton's relationship with Main Street and Soleil Group and their interaction with the Hotel pursuant to the License Agreement, Starwood and Sheraton exerted sufficient control over the daily operations of the swimming pool and whirlpool tub areas such that Main Street and Soleil Group could be their agents. *Id.* (analyzing *Watkins v. Mobil Oil Corp.*, 291 S.C. 62, 352 S.E.2d 284 (Ct.App.1986)); *see, e.g., Hong Wu v. Dunkin' Donuts, Inc.*, 105 F.Supp.2d 83 (E.D.N.Y.2000) ("In deciding whether a franchisor may be held vicariously liable for acts of its franchisees, courts determine whether the franchisor controls the day-to-day operations of ·the franchisee, *and more specifically* whether the franchisor exercises a considerable degree of control over the instrumentality at issue in a given case.") (emphasis added).

Like its arguments for direct liability, Plaintiffs rely solely on the provisions of the License Agreement and the Brand Standard inspections to establish that Starwood and Sheraton had the right to, and did, control the day-to-day operations of the Hotel. Thus, there is no general issue of material fact with respect to how Starwood and Sheraton allegedly controlled Main Street and Soleil Group, and the court can determine whether there was sufficient control for an actual agency relationship to result as a matter of law. *Allen*, 409 F.Supp.2d at 678. After reviewing the record, the court does not find that the mere terms of License Agreement and Brand Standards inspections sufficiently establish, on their own, that Main Street and Soleil Group acted as Starwood and Sheraton's agents. *See Choice Hotels Int'l v. Palm–Aire Oceanside*, No. 95–2592, 1996 WL 494063, at *2, 1996 U.S.App. LEXIS 22618, at *6 (4th Cir. August 30, 1996) ("While the franchise agreement entitled [the franchisor] to inspect the motel to preserve the reputation of its trade-marks, it did not alter the primary duty that [the franchisee] owed to its guests.").

■ The License Agreement expressly states that Main Street is not Sheraton's agent and that Main Street is "solely responsible for determining the manner in which its rights are exercised and obligations are filled, in the exercise of its business interest and day-to-day control of the Hotel." Additionally, the License Agreement states that Sheraton "has no authority to hire, fire or determine the working conditions or compensation of any [of Main Street's] employees." Although "the denial of an agency relationship in a franchise agreement is not alone determinative of liability," *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 167 (4th Cir. 1988), Plaintiffs have failed to offer any evidence that Starwood or Sheraton exerted control over the day-to-day maintenance and operation of the Hotel's swimming pool or whirlpool tub. Moreover, Lynn Dougherty, Sheraton's Senior Vice President of Owner Relations and Franchise, testified in her deposition that Starwood does not manage franchise hotels, and its "interaction with ... franchise hotels ... is not on a day-to-day basis." Ms. Dougherty also testified that, as opposed to franchise hotels, Starwood and Sheraton did specifically regulate the maintenance, cleanliness, filtration, purification, and sanitization of its air, water, and plumbing systems of the hotels it managed "because [they] were responsible for the oversight of those hotels." Plaintiff has not presented evidence of specific testing or processing required by Starwood or Sheraton of the Hotel's swimming pool or whirlpool tub systems, and it likely does not exist, as Soleil Group admitted in its response to Plaintiffs' Request for Interrogatories that Main Street owned the Hotel and it managed it. This point is corroborated by the fact that the License Agreement indicates

that Main Street holds record fee title to the Hotel premises.

Plaintiffs rely on the South Carolina Supreme Court's opinion in *Fernander v. Thigpen*, 278 S.C. 140, 293 S.E.2d 424 (1982) to support their assertion that the very terms of the License Agreement establish Starwood's and Sheraton's right to control the Hotel. In *Fernander*, the Court concluded that sufficient evidence existed to create a jury issue as to whether any agency relationship existed between a franchisor and a franchisee. *Id.* at 144, 293 S.E.2d at 427. While the Court in *Fernander* did find evidentiary weight in the fact that the franchise agreement covered thirty-eight areas and gave the franchisor the right to require *all* personnel to comply with *all* reasonable requirements made by it, the court found the franchisor's right to control the daily operating policies of the franchisee, including management of the employees, to be most important. *Id.* at 144, 293 S.E.2d at 426–27. Nothing in the record indicates that Starwood or Sheraton retained the right to control anyone employed at the Hotel, much less its management. In fact, the License Agreement expressly states that Sheraton did not have such a right.

More importantly, the Court in *Fernander* expressly stated that its ruling was based not only on the franchise agreement and rules and regulations that existed between the franchisor and franchisee of that case, but also on the direct testimony from several employees of the franchisee.[2]

Both the assistant manager and another employee of the franchisee testified that they thought the franchisor employed them, and the assistant manager further testified that he thought the franchisor and franchisee were one in the same. The Court in *Fernander* found that this evidence, when considered with the provisions of the franchise agreement, created an issue over whether the franchisor exerted sufficient control over the franchisee. Plaintiffs have not offered similar evidence in his case. In fact, the testimony of several Hotel employees shows that these employees knew that Starwood and Sheraton did not own or manage the Hotel. Jackie Cooper–Fulton, who has worked in several capacities at the Hotel since 2000, acknowledged that "Starwood is the parent company that owns ... the name Sheraton, the brand Sheraton." She also testified that, in 2003, Starwood's ownership and management of the Hotel ceased, but despite the change in ownership, the Hotel continued to operate under the name "Sheraton," because "that's the whole point of us staying a Sheraton, to try to have minimal to no guest knowledge that the hotel was sold because we want things to still be as consistent as possible." Moreover, as noted above, Mr. Zubel, the Hotel's General Manager, testified at his deposition that he knew he was an employee of Soleil Group. He also understood that Starwood and Sheraton were franchisors of the Hotel and confirmed that neither Starwood nor Sheraton had any con-

---

**2.** In *Fernander*, the trial court granted summary judgment in favor of the franchisor based on the Virginia Supreme Court's decision in *Murphy v. Holiday Inns, Inc.*, 216 Va. 490, 219 S.E.2d 874 (1975), which found that the facts determinative of the question of actual agency were those contained in a license agreement between a franchisor and franchisee, and the terms of the license agreement did not give the franchisor sufficient control to create a principal-agent relationship. In reversing the trial court's decision, the majority in *Fernander* distinguished *Murphy* from its facts on two grounds, one being that, "in *Murphy*, the plaintiff offered only the licensing agreement as evidence of an agency relationship, and the court based its decision *solely* on upon that agreement. In contrast here direct testimony was offered by several witnesses to show agency." *Fernander*, 278 S.C. at 142, 293 S.E.2d at 426 (emphasis in original).

trol over the day-to-day operations of the hotel. He indicated that they only monitored the brand standards that Main Street and Soleil Group had to comply with pursuant to the License Agreement. Thus, unlike the employees in *Fernander,* the employees of the Hotel were well aware that Starwood and Sheraton no longer owned and managed the Hotel and that those rights and responsibilities existed with Main Street and Soleil Group, for whom they were employed.

Thus, the court does not find that Starwood and Sheraton controlled the day-to-day operations of the Hotel or the maintenance and operation of the swimming pool and whirlpool tub. As other courts have concluded, license agreements and brand standard inspections merely allow franchisors to maintain "uniform service within, and public good will toward, the [franchisor's] system." *Allen,* 409 F.Supp.2d at 678, *aff'd,* 276 Fed.Appx. 339, 343 (4th Cir.2008); *see, e.g., Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *7, 2005 U.S. Dist. LEXIS 39822, at *26 (E.D.Mo.2005) (finding that the license agreement's provisions were "clearly intended to ensure that [the franchisor had] control necessary to preserve the uniformity and standards of its franchise system," and "cannot be said to give [the franchisor] the control over the day-to-day operations of the hotel necessary to create an agency relationship"). Based on the foregoing, Starwood and Sheraton are entitled to summary judgment on Plaintiffs' claims that Main Street and Soleil Group acted as their actual agents.

#### b. *Apparent Agency Relationship*

■ Finally, Plaintiffs assert that Starwood and Sheraton are vicariously liable because Main Street and Soleil Group acted as their apparent agents. "The doctrine of apparent authority provides that the principal is bound by acts of his agent when he has placed the agent in such a position that persons of ordinary prudence, reasonably familiar with business usages and custom, are led to believe the agent has certain authority and in turn deals with the agent based on that assumption." *Spence v. Spence,* 368 S.C. 106, 126, 628 S.E.2d 869, 879 (2006). To establish apparent agency, it is not enough simply to prove that the purported principal by either affirmative conduct or conscious and voluntary inaction has represented another to be his agent; rather, the third party must also establish that he or she reasonably relied on the "authority *originated by the principal*" and that such reliance changed his or her position. *Frasier v. Palmetto Homes of Florence, Inc.,* 323 S.C. 240, 245, 473 S.E.2d 865, 868 (Ct.App. 1996) (emphasis in original) (citation omitted). Therefore, in order for Plaintiffs to recover against Starwood or Sheraton based upon this theory, they must prove: (1) that Starwood or Sheraton consciously or impliedly represented to them that Main Street or Soleil Group acted as their agents; (2) that they relied upon the representation; and (3) that there was a change of position to their detriment. *Cowburn v. Leventis,* 366 S.C. 20, 39, 619 S.E.2d 437, 448 (Ct.App.2005) (citation omitted). Again, in conducting this analysis, "[t]he focus is on the acts and conduct of the principal, not the agent." *Simmons v. Tuomey Reg'l Med. Ctr.,* 341 S.C. 32, 46, 533 S.E.2d 312, 320 (2000).

As to the first element, Plaintiffs argue that Starwood and Sheraton represented the Hotel as its agent because they were never made aware of the Hotel's independent ownership in any of their dealings with it. Based on previous trips Plaintiffs have taken, they claim to be aware of the Sheraton and Starwood brands and first sought information about the Hotel through Sheraton's national website found at "www.sheraton.com." According to Plaintiffs, nothing on the website indicated

that the Hotel was independently owned and operated. Mrs. Triplett also contacted the Hotel by telephone, and she was never informed that Main Street and Soleil Group actually owned and operated the Hotel. Plaintiffs also contend that the informational packet they received from Yolanda Patterson, the Director of Catering for the Hotel, only contained references to Starwood and Sheraton and failed to disclose Main Street's ownership and Soleil Group's management of the Hotel. Finally, Plaintiffs provided a copy of the Hotel's elevator permit, which listed "Starwood Lodging Corp" as the owner and operator of the Hotel, and a 2003 Annual Operating Permit Fee Receipt for the swimming pool, which lists "Starwood Hotels & Resorts" as the recipient. As to the second and third elements necessary to establish an apparent agency, Plaintiffs argue that they reasonably relied upon these representations in selecting the Hotel as the venue for Mrs. Triplett's high school class reunion and would not have reserved the Hotel for this event had they known the Hotel was not owned and operated by Starwood and Sheraton.

Starwood and Sheraton contend that they never represented, either consciously or impliedly, that Main Street and Soleil Group served as their agents. As to Plaintiffs' use of the elevator permit, they contend that the permits incorrectly list Starwood Lodging Corp. as the owner of the Hotel, but even so, Plaintiffs were not overnight guests at the Hotel and never claimed to have seen or relied upon the information in the elevator permit in deciding to reserve the Hotel for Ms. Triplett's reunion. As to Plaintiffs' use of the 2003 Annual Operating Permit Fee Receipt for the swimming pool area, Starwood and Sheraton did own the Hotel when the South Carolina Department of Health and Environmental Control issued this permit on January 30, 2003, but this was several years before Plaintiffs' visit to the Hotel.

Starwood and Sheraton provided swimming pool and whirlpool tub operating permits issued for the year beginning on April 1, 2005 and ending on March 31, 2006, and they no longer list Starwood or Sheraton as the holders of the permits, since they sold the Hotel in 2003.

Starwood and Sheraton also argue that the License Agreement and Brand Standards expressly require Main Street to disclose to its guests that the Hotel is independently owned. Section 19(c) of the License Agreement states:

> In all dealings with third parties, including employees, suppliers, customers and public officials, [Main Street] shall disclose in an appropriate manner acceptable to [Sheraton] that [Main Street] is an independent legal entity operating under license from [Sheraton] and shall place notices of independent ownership on the Premises used by [Main Street] and on such signs, forms, contracts, checks, advertising and other material as [Sheraton] may require from time to time.

In addition to this directive, Brand Standards 04.03.01S and 04.03.02S required the following:

> ***ESSENTIAL STANDARD—Essential components are in bold and italics:***
> ***Franchise hotels display ownership disclosure with the correct language (see below) and in the following locations:***
> - ***Sign behind front desk***
> - Sign at entrance or greeter podium in restaurants with exterior entrances
> - Business cards
> - Executive stationery
> - Checks
> - Purchase Orders

In Franchise Hotels, ownership disclosure states one of the following:

The Sheraton _____ is independently owned by _____ and operated under a license issued by The Sheraton Corporation. . . .

OR

The Sheraton _____ is independently owned by _____ and operated by _____ under license issued by The Sheraton Corporation. . . .

Ms. Dougherty testified at her deposition that Starwood and Sheraton require outward identification in franchise hotels which indicate to customers that the hotel is a franchise-owned hotel. She also testified that the independent ownership disclosure is required on a sign at the front desk, as well as on stationary and business cards. Finally, Stan Lashner, the Chief Operating Officer at LRA Worldwide, Inc., which performs periodic quality assurance inspections of Sheraton licensed hotels, attested to the fact that the Brand Standards applicable to the Hotel in 2005 required the following specific disclosure language in various places of the Hotel: "The Sheraton Hotel North Charleston—Convention Center is independently owned by Main Street, LLC, and operated by Soleil Group Inc., under a license issued by the Sheraton Corporation."

Of course these provisions and testimony do not evidence representations made by Starwood or Sheraton, as principals, to Plaintiffs, as third parties, which is the primary focus when determining whether an apparent agency relationship exists between a principal and its alleged agent. Mr. Lashner did, however, attest that a July 18, 2005 quality assurance inspection of the Hotel revealed that Main Street complied with the Brand Standards that require disclosure of its independent ownership on business cards, executive stationary, checks and purchase orders, on a sign at the front desk, and at the entrance or greeter podium in a restaurant with an exterior entrance. In addition to Mr. Lashner's affidavit, Starwood and Sheraton provided part of the July 18, 2005 Management Action Plan Report, which listed all items which were found to be non-compliant with the Brand Standards applicable to the Hotel. Consistent with Mr. Lashner's attestations, the Brand Standards requiring disclosure of independent ownership were not listed.

Plaintiffs argue that even if a sign that disclosed the Hotel's independent ownership did exist, which they contend they never saw, that fact does not defeat their argument that Starwood and Sheraton represented to them that Main Street and Soleil Group acted as their apparent agents. They contend that they never visited the Hotel before reserving its facilities; thus, they never had the opportunity to see such a sign until the day they arrived for the reunion. To support this assertion, Plaintiffs cite to the Fourth Circuit's opinion in *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 167 (4th Cir.1988). In *Crinkley*, guests of a hotel were assaulted in the franchisee-hotel, and they sued, among other defendants, the franchisor of the national brand utilized by the franchisee-hotel. In finding that the evidence sufficed to let the jury determine whether an apparent agency relationship existed between the franchisor and franchisee, the court noted that "[t]he only indication that the [hotel] was not owned by [the franchisor] was a sign in the restaurant that stated that the motel was operated by [the franchisee] under a franchise agreement." *Crinkley*, 844 F.2d at 166–67. Later in the opinion, the court reiterated, "Again, in the instant case, the only indication that a franchisor-franchisee relationship existed was a sign in the restaurant which the Crinkleys had had no occasion to see before they checked in." *Id.* at 167 n. 3. Plaintiffs argue that, since they too did not see any signs disclosing the Hotel's inde-

pendent ownership before it reserved its facilities for Mrs. Triplett's class reunion, the court should follow this decision and find that sufficient evidence exists for a jury to determine whether or not an apparent agency relationship existed in this case.

Starwood and Sheraton believe that Plaintiffs' reliance on *Crinkley v. Holiday Inns, Inc.* is misplaced for several reasons. First, they contend that Plaintiffs, unlike the plaintiffs in *Crinkley,* did receive notification of the Hotel's independent ownership prior to arriving at the hotel and in addition to the placards located within it. Starwood and Sheraton provided a copy of the "Terms and Conditions" for use of Starwood's website, which stated, "This web site and the related web sites contained herein (collectively, the "Site") make available information on hotels, resorts, and other transient stay facilities (each a "Property") owned, managed *or franchised* by Starwood Hotels & Resorts Worldwide, Inc. and/or its subsidiaries and affiliates." While this language did not specifically state that the Hotel which Plaintiffs used for the reunion was franchised, the above quoted language sufficiently represents that not all of the Starwood and Sheraton brand hotels are owned and managed by them. In addition to this evidence, Ms. Patterson included her business card with the informational packet she mailed to Plaintiffs, and it expressly stated, albeit in very small type size, that "[t]he Sheraton North Charleston is independently owned by First American Hotels and operates under a license

issued by the Sheraton Corporation." This evidence represented that Starwood and Sheraton did not own or operate the Hotel. Thus, the record in this case contains evidence that the Fourth Circuit did not have the opportunity to consider when it decided *Crinkley.*

Starwood and Sheraton's second reason for asserting that Plaintiffs' reliance on *Crinkley* is misplaced is that the case came out of North Carolina, under North Carolina law, and is contrary to South Carolina law. In fact, the footnote from the *Crinkley* opinion, on which Plaintiffs rely, specifically distinguishes the facts of that case from the facts presented in a North Carolina Court of Appeals' decision. Starwood and Sheraton believe that *Allen v. Choice Hotels Int'l,* 409 F.Supp.2d 672 (D.S.C.2006) constitutes a more fitting authority for the court to consider, and after reviewing the cases, the court finds that *Allen* represents South Carolina precedent on this issue. The court in *Allen* found that the evidence did not support a finding that a franchisor of a hotel brand represented the operators of the franchisee-hotel to be its apparent agents since it placed three placards throughout the hotel that expressly stated otherwise.[3] In reaching this conclusion, the court relied on the South Carolina Court of Appeals decision in *Watkins v. Mobil Oil Corp.,* 291 S.C. 62, 352 S.E.2d 284 (Ct.App.1986), whereby the court found that the plaintiff failed to present sufficient evidence to create a genuine issue of material fact over whether or not an apparent agency rela-

---

**3.** Although Plaintiffs argue that the *Allen* court did distinguish *Crinkley* based on the extent and location of the independent ownership disclosures in the franchisee-hotel, the problem the court found with the disclosure made available to guests at the franchisee-hotel in *Crinkley* was that there was only one, and it was displayed in the hotel's restaurant, which made it likely that guests would not see

the disclosure until *after* they already checked in. *Crinkley,* 844 F.2d at 167 n. 3 (emphasis added). In the present case, there is circumstantial evidence that independent ownership disclosures existed in several locations of the hotel, including the front desk; therefore, the court does not find the facts concerning the disclosure placards in *Crinkley* analogous to those presented in this matter.

tionship existed between Mobile Oil Corporation, as franchisor, and the operator of a service station, as franchisee. The court of appeals in *Watkins* stated:

> We disagree with [plaintiff's] argument that the sale of Mobil's products, the presence of Mobil's signs and a similar emblem on the station manager's uniform, and the recital in the arrest warrant signed by [the service station employee] identifying the station as the "North Main Mobil" constituted sufficient evidence to establish apparent agency.

*Watkins*, 291 S.C. at 68, 352 S.E.2d at 287. Like these factors discussed by the court in *Watkins*, Plaintiffs primarily rely on Starwood's and Sheraton's national advertising, as well as the Hotel's use of their logo and brand names, to show that these Defendants represented to them that they owned the Hotel, especially since they never read any information or were told by anyone to believe otherwise. *Allen* and *Watkins*, however, preclude a finding that this evidence, by itself, sufficiently represents to third parties that a hotel and its operators act as the franchisor's apparent agents. Moreover, Plaintiffs have not provided any South Carolina law to counter the *Allen* court's observation that "[n]o South Carolina court has held that a franchisee's use of its franchisor's trademark or trade name and national advertisements concerning the trademark constitute a representation." *Allen*, 409 F.Supp.2d at 680.

■ After carefully reviewing the record, the court does not find that Plaintiffs have submitted evidence sufficient enough to create a genuine issue of material fact as to whether or not Starwood and Sheraton represented to them that Main Street and Soleil Group had the apparent authority to act as their agents. South Carolina precedent has refused to find that national advertising and brand name usage constitute a representation of apparent authori-

ty, and Starwood and Sheraton have provided evidence that several placards were displayed throughout the Hotel that disclosed the Hotel's independent ownership. Moreover, the "Terms and Conditions" of Starwood's website and the business cards used by the Hotel's employees expressly represented to Plaintiffs, as well as other potential guests, that certain hotels operating under the Starwood and Sheraton brand names are independently owned and that the Hotel in question was one of them. Therefore, Starwood and Sheraton are entitled to summary judgment on Plaintiffs' claims that Main Street and Soleil Group acted as their apparent agents.

## CONCLUSION

Based on the foregoing, the court **ORDERS** that Defendant Starwood Hotels & Resorts Worldwide, Inc. and Defendant The Sheraton, LLC's Motion for Summary Judgment is **GRANTED**.